26034. RAGAN *et al.* v. WARE *et al.*

DECIDED APRIL 10, 1937.

*Hal M. Smith, W. A. Wooten,* for plaintiffs in error.

*Will Ed Smith, D. D. Smith,* contra.

BROYLES, C. J. This case, a suit on a note, is unusual in several respects. It was originally brought by the Federal Reserve Bank of Atlanta, then R. E. Ponder was substituted as plaintiff, and finally Mrs. E. H. Ware was named as plaintiff. Verdict and judgment were rendered in her favor in 1934, and the judge granted a new trial. On the second trial she obtained a verdict and judgment for $1100.30 principal, $403.46 interest to date of judgment, and $225.56 attorney's fees, against W. W. Ragan trading as Peacock Service Station, as principal, and R. T. Ragan, C. A. Ragan, and W. J. Daniel, as cosureties. Judgment against W. W. Ragan was by default. R. T. Ragan and C. A. Ragan made a motion for new trial, which was overruled, and on this judgment they assign error. Though the judgment against W. J. Daniel, as one of the three cosureties, was against his contention, he filed no objection; and he, a defendant in the trial court, and Mrs. Ware, the plaintiff in the trial court, are defendants in error in this court. It is undisputed by all parties that Mrs. Ware is entitled to recover the full amount of the judgment. The issue is among the defendants in the trial court, R. T. Ragan, C. A.

Ragan, and W. J. Daniel, as to the capacities in which they signed the note. All the parties agreed that, from the evidence adduced, there were three possible verdicts the jury could render. These verdicts were typewritten and sent out with the jury. All were in favor of the plaintiff, and were (1) "against W. W. Ragan trading as Peacock Service Station, as principal, and against R. T. Ragan, C. A. Ragan, and W. J. Daniel, as cosureties;" (2) "against W. W. Ragan trading as Peacock Service Station, R. T. Ragan, and C. A. Ragan, as principals, and W. J. Daniel as surety;" and (3) "against W. W. Ragan trading as Peacock Service Station, as principal, and W. J. Daniel as surety for him, and against R. T. Ragan and C. A. Ragan as surety for both W. W. Ragan trading as Peacock Service Station and W. J. Daniel." It is apparent that W. W. Ragan, against whom judgment had been rendered by default, and who had given "bogus checks" aggregating more than a thousand dollars, and who had absconded, was insolvent, and counsel for Mrs. Ware admits that the other three defendants are solvent and that a judgment against any of them is collectible. This being true, the contention of the plaintiffs in error that they were only secondarily liable, and that, as between them and Daniel, Daniel was the primary surety, if sustained, would release the three Ragan brothers entirely. However, the jury rendered the verdict first set out above, against W. W. Ragan trading as Peacock Service Station, as principal, and R. T. Ragan, C. A. Ragan, and W. J. Daniel as cosureties; and there was evidence to support this finding.

The suit, as first brought by the Federal Reserve Bank, and adopted by each of the substituted plaintiffs, was against W. W. Ragan trading under the name of Peacock Service Station, R. T. Ragan, and Claude Ragan, *as makers,* and W. J. Daniel *as indorser.* The note was signed on the *face* by "Peacock Service Station, Pr. R. T. Ragan, Claude A. Ragan," and was indorsed on the *back* by "W. J. Daniel, Citizens Banking Co. By E. H. Ware, Cashier." The banking company was liquidated, and was not a party to this litigation. Daniel's answer to the petition averred that "he received no part of the consideration for which the note was given, and that he made and executed said note merely as a surety for the makers thereof, W. W. Ragan, R. T. Ragan, and Claud Ragan." Claud and R. T. Ragan first answered

that "the obligation of these said defendants, R. T. Ragan, Claud A. Ragan, and W. J. Daniel, was solely that of suretyship and as sureties for the principal debtor W. W. Ragan," which was in accordance with the finding of the jury; but before the trial of the case R, T. and C. A. Ragan amended their plea and alleged that W. W. Ragan was insolvent, that Daniel was surety for W. W. Ragan, and that R. T. and C. A. Ragan were sureties for Daniel. The note sued on was the fourth of a series, having been renewed three times.

There was ample evidence to support the allegations of Daniel's answer that he signed the note as surety for the three Ragans, which evidence also rebuts the contentions of R. T. and C. A. Ragan, plaintiffs in error. Daniel's testimony showed that he had extended credit to W. W. Ragan to enable him to operate a filling-station on the promise of R. T. Ragan, to indemnify Daniel against any loss; that W. W. Ragan gave some bad checks which were held by the bank; and that the note sued on was given in lieu of those checks. Daniel testified, in part, as follows: "I signed my name on the back of this note . . as indorser, surety, security, or whatever you call it. . . In the beginning Willie [W. W.] Ragan came to me and wanted to run the station. Of course I knew Willie. R. T. and Claud [Ragan] have been looking after him ever since I have known him. I would not make any trade with Willie on the station until I talked with R. T. about it. . . R. T. told me to let him have the station and he would see that I did not lose anything. That is exactly his language. . . Willie got started and doing fine. He had worked out a nice business up there. He finally let his credit get a little too slack; that is, his checks started to flying back. . . After these checks were reaching a rather large proportion I closed down on Willie and would not give him any more credit. . . One morning we woke up and Willie was gone. . . So I went to see R. T. and reminded him what he had told me in the beginning. He said he did and I was right. After we hemmed and hawed around a day or two we reached this agreement: R. T. was going to take the station over himself; and he is the man that put Arthur Thompson there to operate it. I did not have anything to do with Arthur Thompson. He made the trade with him, was to pay him so much money per week. I had nothing to

do with it. . . These bogus checks [given by W. W. Ragan, brother of plaintiffs in error] were there in the bank. . . Those checks had to be disposed of. I talked with R. T. about it. . . They reached an agreement if [that?] the bank would lend them, not me, money to cover the amount of those bogus checks, . . and this loan for a thousand and some odd dollars was made. I did not get the benefit of that money; the bank got the benefit of it by covering those bogus checks; they swapped one for the other. I turned those checks over to Claud Ragan. I surrendered all evidence of indebtedness that I had, and it was accepted by these gentlemen. . . From the time this first note was given in February, 1928, until the note sued on was given March 21, 1931, I did not pay the interest on this loan. I never paid a dime on it. When this note was renewed from time to time the bank never surrendered to me the old note. . . Both Claud and R. T. Ragan signed that note before I did. . . Ware appeared before the finance committee [of the bank] . . and presented the application for this loan on behalf of Ragan brothers, and it was approved on condition that I indorse the paper. . . They were not loaning this money to me, and I did not get the money. The bank got the money. I did not receive credit for the money. The bank paid these bogus checks with it." Under this evidence it appears that the Ragan brothers assumed the obligation of their brother and reached an agreement with the bank whereby the bank lent them the money to cover the amount of W. W. Ragan's bogus checks; but the finance committee of the bank would not approve the loan unless Daniel (who was also interested) should indorse the note. The Ragans signed on the *face* of the note and Daniel signed on the *back*, and the plaintiff sued the three Ragans as makers and Daniel as an indorser. Under these circumstances Daniel is prima facie a surety, though the presumption is rebuttable. *Arnold* v. *Darby,* 49 *Ga. App.* 629 (3) (176 S. E. 914). Moreover, there was good reason for R. T. and C. A. Ragan to sign the note with their brother W. W. Ragan. The following excerpt from the brief of counsel for the plaintiff, Mrs. Ware, is amply supported by the record: "There were several benefits flowing to plaintiffs in error brought [shown?] in the trial of this case. One was that R. T. Ragan had promised Daniel that if he would sell W. W. Ragan the gas and oil, he would see

to it that Daniel should not lose anything on him. Another was that the plaintiffs in error did not want their brother, W. W. Ragan, brought back from Ohio to stand trial for criminal charges for giving bad checks. A third was that the plaintiffs in error wanted to take up the checks given by their brother."

While the evidence supported Daniel's contention that the three Ragans were makers and Daniel was surety for them on the note, there was some evidence tending to show that R. T. and C. A. Ragan and W. J. Daniel signed as cosureties as was found by the jury. Theo Edwards testified, in part, as follows: "When the original note for $1012.61, dated February 18, 1928, signed by the Ragans and indorsed by W. J. Daniel, was given, I was a member of the finance board of the Citizens Banking Company, and remember when that note was placed before the committee by Mr. Ware, the cashier of the bank. My recollection is that Willie [W. W.] Ragan is the one that applied for the loan, and it was discussed awhile by the committee, and the only action taken was that the loan would be made provided Wright [Daniel] and R. T. and Claud [Ragan] would be responsible for the payment to the bank. . . I think the committee did not consider it a good loan to let Willie have it unless they were secured by the three men that I mentioned, that they would be responsible for the payment." This evidence authorized the verdict rendered against the three defendants as cosureties. And there was other evidence tending to show that R. T. and Claud Ragan recognized their obligation to pay the note, and signed it either as makers or as sureties for W. W. Ragan, and not as sureties for Daniel. There was evidence to show also that they signed the note *before* Daniel did. R. T. Ragan testified: "I did not sign the note anywhere except on the face. My brother Claud was working in the bank at the time. . . Claud and I signed the note sued on, and W. J. Daniel's name was not on the note when I signed it." Claud Ragan testified: "The last credit, seventy-odd dollars, was made by me personally with a time certificate I had in the bank at the time it closed. . . That was the last credit I put on it with my own money. . . When a party signs a note as principal it is usual and customary to sign it on the face of the note, and if he is signing it as surety it is usual and customary for him to sign it at the bottom or on the back of it. . . After these

papers got into the hands of Mr. Ware or Mrs. Ware I had a settlement with Mr. Ware of the indebtedness of Ragan brothers, and I made an effort to get this other note included in that settlement, . . and he [Ware] said 'I will give you everything except one note, and that is the Peacock Service Station note,' and he would not give me that note." If plaintiffs in error were sureties for Daniel, the presumption is that they would not have signed the note before Daniel signed it, and they would not have been making payments on the note that Daniel was due to make, it being undisputed that Daniel was solvent. Moreover, according to the charge of the court, which is not objected to, the plaintiffs in error agreed that the verdict rendered should be one of three possible verdicts, and the three verdicts were typewritten and sent out with the jury. This, in effect, is an admission that the evidence authorized the verdict as rendered. From the evidence the jury could have concluded that Daniel, in order to procure payment of the checks given by W. W. Ragan, payable to Daniel, and held by the bank, signed the note as primary surety for W. W. Ragan, and that R. T. and C. A. Ragan signed it merely as sureties for Daniel. Or they could have concluded that R. T. and C. A. Ragan, in order to protect their brother who had given bad checks and absconded, and in order to fulfil the obligation and promise to Daniel to see that he lost nothing by crediting W. W. Ragan, signed as principals with W. W. Ragan or as primary sureties for W. W. Ragan. Or they could have concluded that R. T. Ragan, C. A. Ragan, and W. J. Daniel all signed as cosureties to protect their several interests. The jury reached the last-named conclusion, and their verdict was authorized.

. The special grounds of the motion for new trial are all directed against the charge of the court—either a refusal or failure to charge, or to excerpts therefrom. After a careful consideration of these grounds we are of the opinion that they show no reversible error. While necessarily the plaintiff's rights had to be protected throughout the trial, the contest was among the Ragans and Daniel, the defendants, and the issue was one of fact as to how they signed the note. R. T. and C. A. Ragan contended that they were sureties for Daniel; and Daniel contended that he was surety for the Ragans. This being true, the charge of the court as given, in the main, applied alike to each of the contestants, and

was no more favorable or detrimental to one than to the others. The instructions which it is alleged the court refused or failed to give tended to argue or unduly stress the contentions of the plaintiffs in error, and, where applicable, were sufficiently covered by the charge as given. The court did not err in overruling the motion for new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*